IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

HEARTLAND CONSTRUCTION, INC.,

      Plaintiff,

      v.                        Civil Action No. _____

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

**SERVE:**

Corporation Service Company, R/A
100 Shockoe Slip, Floor 2
Richmond, VA 23219

      Defendant.

## **COMPLAINT**

      Plaintiff, Heartland Construction, Inc. ("HCI") hereby files the instant Complaint against Travelers Casualty and Surety Company of America ("Travelers") for breach of contract, and declaratory judgment, and in support thereof avers as follows:

## I.    **PRELIMINARY STATEMENT**

      1.    Through this action HCI seeks damages resulting from the denials of insurance coverage under Policy Number 058-LB-107060732 (the "Policy") by Defendant Travelers for Employee Theft under Insuring Agreement A.1, Forgery and Alteration under Insuring Agreement B, the Policy, On Premises losses under Insuring Agreement C.1. and C.2., Computer Fraud under Insuring Agreement F.1.and Claim Expenses under insuring Agreement I, as discussed in more detail below, that occurred and were perpetrated by Matt Hemmis ("Matt Hemmis") and P.J. Potter

1

Enterprises, Inc. ("PJP"). A copy of the Policy is attached hereto as Exhibit #1. As set forth herein, Travelers has wrongfully denied coverage under the Policy for HCI's losses.

## II.     **THE PARTIES**

2.     Plaintiff HCI is a foreign corporation organized and existing under the laws of the State of Kentucky, with a principle place of business in Chesapeake, Virginia.

3.     Upon information and belief, Defendant Travelers is a foreign stock corporation organized and existing under the laws of the State of Connecticut, with a principle business address of 1 Tower Square, Hartford, Connecticut 06183-0001.

## III.     **VENUE AND JURISDICTION**

4.     The subject matter jurisdiction of this Court is based upon 28 U.SC. §1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this District.

## IV.     **FACTUAL BACKGROUND**

### A.     **The Loss**

6.     HCI is a sub-contractor engaged in the business of managing and/or constructing large-scale construction projects. Matt was employed by Heartland from August 3, 2015 to December 3, 2018. Matt Hemmis served as the President of HCI, but he was never an owner of HCI.

7.     PJP is a service-disabled, veteran owned general contractor engaged in the business of building construction projects for the U.S. Veterans Administration. The Veteran's Administration ("VA") awarded Contract VA 246-17-C-0085 to PJP. Under the contract, PJP

2

would serve as the general contractor for the demolition of an existing building and for the construction of a new building at the Veteran's Administration Medical Center ("VAMC") in Hampton, Virginia (the "Project").

8.      Matt Hemmis' father, Denny Hemmis, was and is the owner and President of PJP. During the periods of time relevant to the claims herein, Matt Hemmis was serving as the President of HCI, and without HCI's knowledge, authorization or consent, Matt Hemmis was also serving as the Vice President of his father's company, PJP, and working at cross-purposes to HCI's best interests.

9.      On January 17, 2017, PJP and HCI intended to, and did, enter into a firm fixed price sub-contract with PJP (the "FFP Subcontract") under which HCI would manage the Project and provide second and third tier sub-contractors for the same.  Under the FFP Subcontract, PJP was required to pay HCI $5,554,711.00 for its services, to be billed on a percentage of completion basis based on a Schedule of Values agreed upon by the parties.

10.      Consistent with the agreed FFP Subcontract and the conduct of HCI and PJP, as evidenced by the HCI Pay Application No. 1, dated June 30, 2017, signed by Matt Hemmis as an officer of by HCI, the "ORIGINAL CONTRACT SUM" equals "$5,554,711" and a total of $202,700 was billed against this fixed contract sum on a percentage of completion basis of "3.65%" of the Project being completed.  This conduct of the parties was consistently followed by HCI and PJP, with Matt Hemmis preparing all of the pay applications Nos. 1-15, over the period June 30, 2017 through and including September 30, 2018, all of which were based upon a fixed price contract sum of $5,554,711 and billed by HCI and paid by PJP on a fixed price, percentage of completion basis.

11.     The FFP Subcontract is no longer resident on HCI's server or anywhere found in HCI's Subcontract files because, without knowledge, authority or approval of HCI or its CEO, Rhonda Bridgeman, and in violation of the duty of loyalty and fiduciary duties owed by Matt Hemmis to HCI as its employee and President, it was surreptitiously, and without notice to or authority from HCI or its CEO, Rhonda Bridgeman, revised on November 4, 2017 by Matt Hemmis to a cost type CM Agreement, destroying the existence of the FFP Subcontract and thereby concealing the existence of the FFP Subcontract and purportedly changing it to a cost type subcontract.

12.     Matt Hemmis altered and destroyed the FFP Subcontract knowing that his employment with HCI was coming to an end and he sought to transfer revenue and profits for HCI's scope of work from HCI to PJP, contrary to the existing FFP Subcontract agreement between the parties. Matt Hemmis' revision of the FFP Subcontract into a cost type subcontract was intended to, and did, conceal the FFP Subcontract from HCI by destroying it. Based on the unauthorized alteration and destruction of the FFP Subcontract intended and agreed upon between HCI and PJP and replacing it with the cost type subcontract, Matt Hemmis and PJP now take the position that HCI is not entitled to fixed price payment, and HCI has been damaged in the amount of $860,734.35.

13.     At all relevant times herein HCI was covered under a comprehensive insurance program as set forth in the Policy with Travelers as evidenced in Exhibit #1 hereto.

14.     HCI meets all General Conditions of the Policy, including General Condition A.5., Ownership of Property.

15.     No exclusions from coverage under the Policy bar HCI's claim.

**B.     The Policy and Claim Under Insuring Agreement A.1 For Employee Theft**

16.     The insurance Policy defines "Theft" in relevant part as "the intentional, unlawful taking of Money, Securities and Other Property to the Insured's deprivation."  See Exhibit #1 at Section III., Paragraph UU.3., p. 14 of 24 of the Crime Policy.

17.     Insuring Agreement A.1. provides insurance coverage to HCI as follows:

1.     Employee Theft

The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money**, **Securities** and **Other Property** directly caused by **Theft** or **Forgery** committed by an **Employee**, whether identified or not, acting alone or in collusion with other persons.

See Exhibit #1 hereto, Crime Policy, p. 1 of 24.

18.     Matt Hemmis' theft, while an employee of HCI, was an intentional, unlawful taking of the true FFP Subcontract that constitutes theft of a Security as defined in Insuring Agreement A1.  The term "Security" is defined under the Policy as "Written negotiable and non-negotiable instruments or contracts representing Money or property including . . .1. … revenue."  See Exhibit #1, Crime Policy, p. 13 of 24, paragraph QQ.

19.     The plain language of the Policy provides that the FFP Subcontract, which was owned by Heartland, was a Subcontract which represented Heartland's Money (a defined term in the Policy) or "property", an undefined term in the Policy, which undefined term includes "revenue".  Through Matt Hemmis' conduct, HCI was deprived of the revenue and as such, it constituted the theft of a Security as defined by the Policy and HCI's claim is covered under Insuring Agreement A1.

20.     The FFP Subcontract was unlawfully taken because, Matt Hemmis' deletion of the FFP Subcontract from its computer system is a crime.  Forensic evidence in HCI's possession proves that the FFP Subcontract was deleted from its computer system by Matt Hemmis and HCI

was only able to recover an unsigned version of it, demonstrating it was prepared contemporaneously with the start of HCI's work on the Project in 2017.

21.     The Federal Computer Fraud and Abuse Act ("CFAA")[1], makes it a crime, *inter alia*, to (a) intentionally access a computer without authorization or to exceed authorized access, and thereby obtain "information from any protected computer if the conduct involved an interstate or foreign communication;" (b) knowingly and with intent to defraud, access a protected computer without authorization or to exceed authorized access, and by means of such conduct further the intended fraud and obtain anything of value; and (c) "intentionally access[ ] a protected computer without authorization, and as a result of such conduct," recklessly or intentionally cause damage.  18 U.S.C. § 1030(3)(c), (a)(4) and (a)(5)(A)(ii) and (iii). Furthermore, Matt Hemmis' computer, issued to him by HCI, was a "protected computer" within the meaning of the CFAA. 18 U.S.C. § 1030(g) expressly provides victims of such conduct with a private right of action: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

22.     Under the Virginia Computer Crimes Act.  Va. Code §18.2-152.et seq., the theft of computer data, whether tangible or intangible, is considered to be a theft of property which will support a criminal conviction for larceny under the VCCA.  Because Matt Hemmis' action in taking and destroying the FFP subcontract was a crime under Virginia law, the FFP Subcontract was unlawfully taken by Matt Hemmis.

23.     The funds were taken unlawfully by Matt Hemmis because both the diversion of the funds and the method thereof violate the law.  Matt Hemmis claims that no payment is due to

---

[1] HCI is a foreign corporation authorized to transact business in Virginia and PJP is a Virginia corporation; therefore there exists jurisdiction in the federal courts and under the CFAA.

HCI because the subcontract is a cost-plus type subcontract and not the original, FFP Subcontract. However, this claim is based on the stolen FFP Subcontract and the altered and forged cost-plus subcontract created by Matt Hemmis while he was an employee of HCI. This is a violation of Va. Code 18.2-178, Obtaining Money or signature, etc., by False Pretense, the Virginia Computer Crimes Act at Va. Code §§ 18.2-152.1 to 18.2-152.15 and the Federal Computer Fraud and Abuse Act at 18 U.S.C.S. §1030.

24.     Matt Hemmis, while he was an employee of HCI, fraudulently made this certification that PJP had flowed through the past payments, yet PJP and Matt Hemmis failed to pay HCI the amounts due as detailed above. See PJP Pay Applications to the VA, for which it received payment and failed to pay HCI. Matt Hemmis therefore improperly took and retained, and deprived HCI access to, HCI's funds in violation of federal law. See the False Claims Act, 31 U.S.C. § 3729(a)(1).

## C.     Claim For Coverage Under Insuring Agreement B (Forgery or Alteration)

25.     On or about March 14, 2019, while conducting discovery in connection with the arbitration proceeding against Matt Hemmis and PJP, among others, HCI located the unsigned Word version of the FFP Subcontract created on January 31, 2017 through a Cloud based storage system, as it was no longer resident on HCI's server, due to Matt Hemmis' purging of it and modification of it to a cost type subcontract on November 4, 2017. The metadata for this Word version of the FFP Subcontract document confirms its author as Matt Hemmis and it was originally created on January 31, 2017. This Word version of the FFP Subcontract is not signed by the parties.

26.     Since the cost type CM Agreement was not created until November 4, 2017, it could not possibly have been signed by Matt Hemmis as President of HCI and Denny Hemmis as

President of PJP on January 31, 2017 as they asserted and misrepresented to HCI, CSV and Rhonda Bridgeman to induce them to sign the January 21, 2019 Settlement Agreement.

27.     With this factual context, we turn to Insuring Agreement B (Forgery or Alteration) under the Policy.  The Policy provides, in pertinent part, coverage for "loss directly caused by Forgery or alteration of, on or in any written Covered Instruments."  The Policy defines "Covered Instruments" in relevant part as "checks, drafts, promissory notes, bills of exchange **or similar written promises, orders or directions to pay a sum certain in Money.**" [emphasis added]. In this case, the January 31, 2017 FFP Subcontract recovered from the Cloud is a "written promise…to pay a sum certain in money" and therefore fits the definition of "Covered Instrument" when considered in context of the conduct of the parties in performing under a FFP Subcontract for the 15 month period from June 30, 2017 through and including September 30, 2018 as described in Paragraph 10 hereinabove.

28.     Matt Hemmis' fraudulent alteration of the FFP Subcontract to a cost type subcontract on November 4, 2017, and concealment of the existence of the FPC Agreement has significantly reduced revenues to HCI, causing it damages.  This fraudulent modification of the contract can leave no doubt that such fraudulent actions establish the essence of a forgery and alteration under Insuring Agreement B.

**D.     Coverage Exists Under Insuring Agreement C. 1. And 2. (On Premises)**

29.     Policy Insuring Agreement C, On Premises, provides, in pertinent part, as follows:

C.  **ON PREMISES**

The Company will pay the **Insured** for:

1. the **Insured's** direct loss of **Money** or **Securities** located inside the **Premises** or

**Financial Institution Premises** directly caused by **Theft**, committed by a person present inside such **Premises** or **Financial Institution Premises**;

2. the **Insured's** direct loss of **Money** or **Securities** located inside the **Premises** or **Financial Institution Premises** directly caused by disappearance, damage or destruction;

30.     As indicated above in Paragraph 18 above, Securities are defined as "contracts representing Money or property" "including….revenue",  and the FFP Subcontract meets this definition. There is no doubt that HCI was a party to, a beneficiary under and an owner of this FFP Subcontract "representing Money or property, "including….revenue".  Therefore, any direct loss associated with the FFP Subcontract caused by any wrongful action of any Employee, individually or in collusion with others, caused by Theft would equate to a wrongful or unlawful taking of the FFP Subcontract under Insuring Agreement C.1. (On Premises).  Furthermore, a loss of the FFP Subcontract "representing Money or property" "including….revenue" caused  "by disappearance, damage or destruction" is covered under Insuring Agreement C.1. (On Premises).  HCI suffered a loss from the "disappearance, damage or destruction" of the FFP Subcontract and is therefore entitled to coverage under Insuring Agreement C.1.

**F.**     **Coverage Exists Under Insuring Agreement F. 1. (Computer Fraud)**

31.     Insuring Agreement F.1., Computer Fraud, provides, in pertinent part, as follows:

**F.  COMPUTER CRIME**

1.  Computer Fraud

The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money**, **Securities** and **Other Property** directly caused by **Computer Fraud**.

Exhibit #1, Crime Policy at p. 3 of 24.

The term **Computer Fraud** is defined as:

**E.  Computer Fraud** means:

The use of any computer to fraudulently cause a transfer of **Money**, **Securities** or **Other Property** from inside the **Premises** or **Financial Institution Premises**:

    1.  to a person (other than a **Messenger**) outside the **Premises** or **Financial Institution Premises**; or

    2.    to a place outside the **Premises** or **Financial Institution Premises**.

Exhibit #1, Crime Policy at p. 7 of 24.

32.    In the instant case, in an effort to defraud HCI into accepting a cost type subcontract with a 2% fee and with the unilateral right for PJP to take over all of the 43 subcontractors HCI was managing on this project and fraudulently inducing HCI, CSV and Rhonda to accept it as a term of the Settlement Agreement entered into on January 21, 2019, Matt Hemmis used HCI's computer system to alter the fixed price subcontract (which as indicated above meets the definition of a Security) into a cost type subcontract. Matt then sent it from the HCI computer system to PJP, which is a place outside the Premises, and had it signed by PJP, allowing PJP and Matt Hemmis to perpetrate the fraudulent alteration of the FFP Subcontract and the fraudulent inducement of HCI, CSV and Rhonda Bridgeman entering into the Settlement Agreement, causing the losses suffered by HCI in this case.

## G.    Coverage Exists Under Insuring Agreement I.  (Claim Expense)

33.    Pursuant to Travelers Crime Policy, page 5 of 24, Insuring Agreement I. (Claim Expense) states, "The Company will pay the Insured for reasonable Claim Expenses incurred and paid by the Insured to establish the existence, amount and preparation of the Insured's proof of loss in support of a covered claim for loss under any Insuring Agreement of this Crime Policy." Under applicable Definitions on page 7 of 24 of the Crime Policy defines "Claim Expenses" to

include reasonable attorney's fees and costs.  Accordingly, HCI demands reimbursement of the same, in the estimated amount of $275,000.


## COUNT I

## BREACH OF CONTRACT AGAINST TRAVELERS

34.     HCI repeats and realleges the preceding paragraphs of the Complaint as if fully set forth herein.

35.     The Policy constitutes a valid and enforceable contract be tween the parties, and its terms expressly provide for insurance coverages in Section IV., Paragraphs A-G above.

36.     Under the terms of the Policy there are no exclusions or limitation that would preclude coverage of HCI's claims for these losses.

37.     Under the terms of the Policy, all conditions precedent to coverage are met.

38.     In contravention to Virginia and other applicable law, and in breach of its coverage obligations, Travelers has wrongfully denied coverage for the insurance coverages in Section IV., Paragraphs A-G above.

39.     As a result of Traveler's breaches of its coverage obligations, HCI has suffered and will continue to suffer damages, including, but not limited to the $860,734.35 set forth in Paragraph 12 above, and attorney's fees and costs in the estimated amount of $275,000 that HCI had to spend in this action.

WHEREFORE, HCI demands judgment against Defendant Travelers for compensatory and consequential damages, pre-judgment and post-judgment interest, costs of suit and such other relief as the Court deems just and equitable.

## COUNT II

## DECLARATORY JUDGMENT

40.     HCI repeats and realleges the preceding paragraphs of the Complaint as if fully set forth herein.

41.     Travelers has improperly denied its coverage obligations to HCI under the Policy for the claims set forth herein.

42.     An actual controversy exists between HCI and Travelers concerning Travelers' coverage obligations to HCI for the coverage claims set forth herein.

43.     HCI seeks a judgment  pursuant to Federal Rule of Civil Procedure 57, declaring and determining that, under the Policy, Travelers is obligated to provide coverage to HCI in full for the claims set forth herein in the amount of  $860,734.35 set forth in Paragraph 12 above, and attorney's fees and costs in the estimated amount of $275,000 that HCI had to spend in this action.

**WHEREFORE,** HCI prays for relief and judgment in its favor and against Travelers on Count II as follows:

a.     Declaring that under the Policy, Travelers is obligated to pay HCI in full for all covered loss HCI suffered as a result of the claims set forth herein in excess of the $5,000 deductible;

b.     Declaring that Travelers has breached its contractual obligations to HCI under the Policy by wrongfully denying coverages claimed herein and by failing to pay HCI for any of the covered loss HCI suffered as a result of such claims;

c.     Declaring that Travelers is obligated to pay HCI all interest allowed by law;

d.     Declaring that Travelers is obligated to pay all attorney and expert fees and expenses incurred by HCI in this action that are allowed by applicable law;'

12

e.    Otherwise declaring HCI's rights and Travelers' obligations under the Policy and applicable law; and

f.    Declaring that Travelers is obligated to pay or provide to HCI all other and further relief that the Court considers just and appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues in this action.

Respectfully submitted this 20th day of January 2021.

HEARTLAND CONSTRUCTION, INC.

By:    /s/ William A. Lascara
Of Counsel

William A. Lascara, Esq. (VSB #23118)
wlascara@pendercoward.com
Jesse B. Gordon, Esq. (VSB #68187)
jgordon@pendercoward.com
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Telephone: (757) 490-36265
Facsimile: (757) 502-7361
*Counsel for Plaintiff*

\WPFILES\Comfort Systems of Virginia\PJ Potter\Insurance Claim. Travelers\Lawsuit\Complaint.docx