IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| HEARTLAND CONSTRUCTION, INC., ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> TRAVELERS CASUALTY AND ) <br> SURETY COMPANY OF AMERICA, ) <br>     Defendant. ) <br> ) | Civil Action No. 2:21CV43 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Partial Motion to Dismiss (ECF No. 7). The Partial Motion to Dismiss has been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons stated below, the Court will grant Defendant's Partial Motion to Dismiss.

**I. BACKGROUND**

**A. The Alleged Underlying Loss**

Heartland Construction Inc. ("HCI" or "Plaintiff") is a Kentucky corporation with a principle place of business in Chesapeake, Virginia, and is a subcontractor in the business of managing and constructing large-scale construction projects. (Complaint ¶¶ 2, 6, ECF No. 1.) Travelers Casualty and Surety Company of America ("Travelers" or "Defendant") is a Connecticut insurance corporation. (*Id.* ¶ 3.) P.J. Potter Enterprises, Inc. ("PJP") is a veteran-owned general contractor in the business of building construction projects for the U.S. Veterans Administration (*Id.* ¶ 7.) Denny Hemmis is the owner and President of PJP. (*Id.* ¶ 8.) Matt Hemmis, Denny Hemmis' son, was employed as the President of HCI from August 3, 2015 to December 3, 2018.

(*Id.* ¶ 6.) Matt Hemmis also served as Vice President of PJP while serving as HCI's President without HCI's knowledge or consent. (*Id.* ¶ 8.)

On January 17, 2017, HCI and PJP entered into a firm fixed price subcontract (the "FFP Subcontract") under which HCI would manage the Project[1] and provide second and third tier subcontractors. (*Id.* ¶ 9.) Under the FFP Subcontract, PJP was to pay HCI $5,554,711.00 for HCI's services to be billed on a percentage of completion basis, based on an agreed upon Schedule of Values. (*Id.*) On November 4, 2017, Matt Hemmis altered the FFP Subcontract, purportedly changing it to a cost-type contract without the consent, authority, or approval of HCI or its CEO. (*Id.* ¶ 11.) Matt Hemmis removed the FFP Subcontract from HCI's servers and destroyed it, replacing it with the cost type subcontract. (*Id.* ¶¶ 11, 12.) As a result of Matt Hemmis' actions, HCI has suffered $860,734.35 in damages stemming from PJP's and Matt Hemmis' insistence that HCI is not entitled to fixed price payment. (*Id.* ¶ 12.)

**B. The Policy**

Travelers issued a Wrap+ Insurance Policy, Policy No. 107060732, with a policy period of March 14, 2019 to March 14, 2020 to HCI. (Def.'s Mem. Supp. Mot. Dismiss at 2, ECF No. 8.) The policy includes various types of coverage, but HCI seeks coverage only under the Crime Coverages section of the policy ("Crime Policy"). (*Id.* ¶ 3.) The Crime Policy provides coverage under nine separate Insuring Agreements[2], and, according to its Complaint, HCI seeks recovery for its loss under four of the nine agreements within the Crime Policy: (1) Insuring Agreement A.1., Employee Theft; (2) Insuring Agreement B., Forgery or Alteration; (3) Insuring Agreement

---

[1] The Project refers to Contract VA 246-17-C-0085, awarded to PJP by the Veteran's Administration. Under the contract, PJP would serve as the general contractor for the demolition of an existing building and the construction of the new building at the Veteran's Administration Medical Center in Hampton, Virginia. (Compl. ¶ 7.)

[2] The nine separate Insuring Agreements are listed on ECF No. 8-1 at 4. The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions.

C.1. and C.2., On Premises; and (4) Insuring Agreement F.1., Computer Fraud. (Compl. ¶¶ 16-32.)

Travelers argues that the Crime Policy contains an exclusion that "explicitly limits coverage for losses caused either directly or indirectly by an employee, to certain insuring agreements." (Def.'s Mem. Supp. Mot. Dismiss at 1-2, ECF No. 8.)  Travelers contends that the exclusion, Exclusion D., "limits coverage for any loss resulting from an employee's actions to Insuring Agreement A.1., Employee Theft, as well as other Insuring Agreements not claimed by HCI or applicable here." (*Id*. at 3.)  Exclusion D. states:

> This **Crime Policy** will not apply to loss resulting directly or indirectly from any fraudulent, dishonest or criminal act committed by any **Employee** or **Fiduciary whether acting alone or in collusion with others, unless covered under Insuring Agreements A.1., A.2., A.3., F.2., or H.**

(ECF No. 1-1 at 71; ECF No. 8-1 at 21.)

## II. PROCEDURAL HISTORY

HCI filed a Complaint (ECF No. 1) against Travelers for breach of contract and declaratory judgment on January 20, 2021.  HCI seeks damages from Travelers "for Employee Theft under Insuring Agreement A.1., Forgery and Alteration under Insuring Agreement B., [], On Premises losses under Insuring Agreement C.1. and C.2., Computer Fraud under Insuring Agreement F.1.[,] and Claim Expenses under [I]nsuring Agreement I." (Compl. ¶ 1.)  On March 19, 2021, Travelers filed a Partial Motion to Dismiss (ECF No. 7).  Travelers seeks to dismiss the Complaint to the extent it seeks damages under Insuring Agreements B., C.1., C.2., and F.1. of the Crime Policy. (Def.'s Mem. Supp. Mot. Dismiss at 1.)  HCI filed a Response in Opposition (ECF No. 14) on April 2, 2021.  Travelers filed a Reply (ECF No. 17) on April 8, 2021.

### III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* In considering a motion to dismiss, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. "In so doing, a court may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Nat'l Union Fire Ins. Co. v. Ferguson Enterprises, Inc.*, No. 4:14CV1, 2014 WL 12588684, at *2 (E.D. Va. July 8, 2014) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

The Fourth Circuit notes that Virginia has adopted the Eight Corners Rule under which the court may "look primarily at the underlying complaints and the insurance policy to determine if there is a potential for coverage." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009); *Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465

(E.D. Va. 2002) ("the 'eight corners rule' requires review of '(1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy.'"). Furthermore, "[a] federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state." *Philadelphia Indem. Ins. Co. v. Associated Universities, Inc.*, No. 3:20-CV-47, 2021 WL 4484556, at *5 (W.D. Va. Sept. 29, 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, the forum state is Virginia, and "[i]n insurance coverage disputes, the general rule in Virginia is that 'the law of the place where an insurance contract is written and delivered controls issues as to its coverage.'" *Id*. (citation omitted). The parties do not dispute the application of Virginia law. As such, the Court shall apply Virginia law.

## IV. ANALYSIS

Travelers argues that coverage under Insuring Agreements B., C.1., C.2., and F.1. of the Crime Policy is barred under Exclusion D. which reads:

> This **Crime Policy** will not apply to loss resulting directly or indirectly from any fraudulent, dishonest or criminal act committed by any **Employee** or **Fiduciary whether acting alone or in collusion with others, unless covered under Insuring Agreements A.1., A.2., A.3., F.2., or H.**

(ECF No. 1-1 at 71.) Travelers avers that Exclusion D. is clear and unambiguous and subject to only one reasonable interpretation. (Def.'s Mem. Supp. Mot. Dismiss at 6, 9.) Travelers asserts that the facts, as stated in the Complaint, show that HCI's claimed loss was the result of a dishonest act of an employee. (*Id.* at 9-10.) As such, Exclusion D. is applicable, thus limiting coverage to that provided under Insuring Agreements, A.1., A.2., A.3., F.2., and H.[3] HCI does not directly dispute the unambiguity of Exclusion D. but asserts that the Court should not focus on the

---

[3] Travelers also asserts that HCI is not entitled to coverage under Insuring Agreement A.1., but Travelers has not moved to dismiss HCI's claims under Insuring Agreement A.1. (Def.'s Mem. Supp. Mot. Dismiss at 6 n.3.) The Court takes no position on this assertion which is not before the Court.

5

exclusionary language of Exclusion D. Instead, HCI argues that the Court should focus on what it describes as "the operative word in Exclusion D."—the word "unless." (Pl.'s Resp. Opp. at 6, ECF No. 14.) HCI argues that Exclusion D. means that if there is coverage under A.1., A.2., A.3., F.2., or H., then "all coverages apply," meaning that there is coverage under each of the nine Insuring Agreements. (*Id*. at 8.)

Under Virginia law, "language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 515 (E.D. Va. 2011) (citing *Granite State Ins. Co. v. Bottoms*, 415 S.E.2d 131 (Va. 1992)). Furthermore, "when interpreting a policy courts must not strain to find ambiguities." *Id.* (citing *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005)). But "ambiguous terms in a policy are construed against the insurer, who wrote the policy and presumably could have written it more clearly." *CACI Int'l, Inc.*, 566 F.3d at 155.

Here, HCI's argument does not directly challenge whether Exclusion D. is ambiguous; instead, HCI essentially asks the Court to find that Exclusion D means something completely different than the meaning Travelers prescribes. HCI's interpretation of Exclusion D., that if there is coverage under Insuring Agreements A.1., A.2., A.3., F.2., or H., then "all coverages apply," meaning that there is coverage under each of the nine Insuring Agreements, is an unreasonable interpretation. HCI is arguing that a showing of coverage under one of the five listed Insuring Agreements is, in effect, a condition precedent to coverage under each of the nine Insuring Agreements. If HCI is correct, then Exclusion D. would not be an exclusion at all. Exclusion D. is clear and unambiguous, and it can be reasonably understood in only one way—to exclude coverage for loss resulting from fraudulent, dishonest, or criminal acts of employees unless

coverage is available under one or more of the five enumerated Insuring Agreements, namely A.1., A.2., A.3., F.2., or H. "[U]nder Virginia law, if the language of an insurance policy is clear and unambiguous, a court will 'give the language its plain and ordinary meaning and enforce the policy as written.'" *Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 809 (W.D. Va. 2007) (citing *Seabulk Offshore, Ltd. v. American Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004)). Consequently, the Court will enforce Exclusion D. as written.[4]

The Complaint alleges that "Matt Hemmis altered and destroyed the FFP Subcontract knowing that his employment with HCI was coming to an end." (Compl. ¶ 12.) Both parties agree that Matt Hemmis was an employee as defined under the Policy, and the Complaint characterizes Matt Hemmis' actions as unlawful and criminal. (Def.'s Mem. Supp. Mot. Dismiss at 9, 10; Pl.'s Resp. Opp. at 11; Compl. ¶¶ 22-23.) As such, Exclusion D. is applicable to HCI's claims. *See McGirk v. Certain Underwriters at Lloyd's*, 2 F. Supp. 3d 837, 841 (W.D. Va. 2014) (excluding coverage and granting insurer's motion to dismiss after finding that "the Exclusion [was] unambiguous and subject to only one reasonable interpretation.")

Because the claimed loss involves the alleged dishonest act of an employee, Exclusion D. applies and, thus HCI has no basis on which to assert a claim under Insuring Agreements B., C.1., C.2., or F.1. Exclusion D. is unambiguous, the allegations fall squarely within Exclusion D., and the Court will enforce the exclusion as written. *Danville Com. Indus. Storage, LLC v. Selective Ins. Co. of S.C.*, 442 F. Supp. 3d 921, 926 (W.D. Va. 2020) (citations omitted) ("reasonable exclusions to coverage, when stated in the policy in clear and unambiguous language that is clearly

---

[4] HCI avers that the "*Lykins* Court properly read Exclusion D. to mean all coverages apply provided coverage under A.1., A.2., A.3., F.2., or H. applies" and urges the Court to reach the same conclusion. (Pl.'s Resp. Opp. at 8.) HCI's argument based on *Lykins* is inapposite here and any reliance on *Lykins* is rejected. First, the decision is not binding on this Court. Second, the opinion was later withdrawn. Order, *Lykins Oil Co. v. Travelers Casualty & Surety Company of America*, No. 1:08-CV-546 (S.D. Ohio Nov. 9, 2009), ECF No. 44.

applicable to a specific situation at hand, will be enforced."). The application of Exclusion D. limits coverage for loss caused by an employee to the five Insuring Agreements listed in Exclusion D., Insuring Agreements A.1., A.2., A.3., F.2. and H. Therefore, HCI's claims under Insuring Agreements B., C.1., C.2., and F.1. are excluded from coverage and will be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Traveler's Partial Motion to Dismiss and dismiss those parts of the Complaint seeking judgment based upon breach of contract and seeking declaratory relief under Insuring Agreements B., C.,1., C.2., and F.1.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date:  February 8, 2022